UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| SOUVANNA HOMESOMBATH, | ) | CASE NO. 4:08 CV 2470 |
| | ) | |
| Petitioner, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| HARLEY G. LAPPIN, et al., | ) | |
| | ) | |
| Respondents. | ) | |

On October 17, 2008, pro se petitioner Souvanna Homesombath filed the above-captioned habeas corpus action under 28 U.S.C. § 2241 against Harley G. Lappin, Director of the Bureau of Prisons (BOP), Corrections Corporation of America ("CCA") President John D. Ferguson, and Warden Joseph D. Gunja at the Northeast Ohio Correctional Center (N.E.O.C.C.). Mr. Homesombath is incarcerated at N.E.O.C.C., a CCA facility, and asserts that his transfer to this prison was based on his national origin. As such, he asserts the transfer violates the Fifth and Fourteenth Amendments of the Constitution. He seeks an order declaring the contractual arrangement between CCA and the BOP "null and void," immediately transferring him to a BOP prison in accordance with 18 U.S.C. §3621(b), and any other relief the court deems appropriate.

*Background*

In 2006, Mr. Homesombath pleaded guilty to conspiracy to distribute "MDMA" in the United States District Court for the Eastern District of Wisconsin. See United States v. Homesombath, No. 06cr000267 (E.D. Wi. 2006). The court sentenced him to 70 months in prison on November 15, 2006, followed by 3 years of supervised release.

Petitioner describes himself as a "non-removable alien from the United States, because his country (Laos) would not accept his return, and he would be ultimately released in the community within on [sic] an Order of supervision pursuant to Immigration law." (Pet. at 4.) On or about September 18, 2007, the BOP classified petitioner as a low security inmate. He was later transferred to N.E.O.C.C. "on the basis of his sex, national origin, and Immigration status."[1] (Pet. at 4.) The staff at N.E.O.C.C. allegedly advised Mr. Homesombath that his transfer stemmed from a contractual arrangement between C.C.A. and the BOP, wherein prison transfers were authorized based on national origin, immigration status and low security re-classification.

Mr. Homesombath complains that since his arrival at N.E.O.C.C. he has been treated differently from other low security prisoners, based on his immigrant and nationality status. He asserts that this is a violation of 18 U.S.C. § 242, which affords all persons protection from any unconstitutional action taken under color of State or federal law.[2] Under the provisions of the Fifth

---

[1] This appears to be a generic phrase inasmuch as petitioner does not address any gender claim or any claim relating specifically to prisoners from Laos.

[2] This is a statute which criminalizes conspiracy to deprive persons of their rights secured by the Constitution or laws of the United States, and the deprivation of rights under color of law. See 18 U.S.C. § 242. Because this criminal statutes does not provide any basis for civil liability, Mr. Homesombath cannot state a claim upon which relief may be granted under this statute. See Krajicek v. Justin, No. 98-1249, 1999 WL 195734 at *1 (6th Cir. Mar.23, 1999), cert. denied, 528 U.S. 1046
(continued...)

2

and Fourteenth Amendments, he also maintains that, as a low security, non-citizen inmate, he is entitled to the same treatment as low security inmates who are citizens of the United States. Petitioner cites the Supreme Court's decision in Johnson v. California, 543 U.S. 499 (2005) to support his assertion that prisoner segregation by race, national origin or immigrant status violates the Constitution. Johnson involved an African-American state prison inmate who brought a 42 U.S.C. §§ 1981 and 1983 equal-protection action against correction officials by challenging the prison's unwritten policy of placing new or transferred inmates with cellmates of the same race during initial evaluation.

Mr. Homesombath contends he is entitled to be treated the same as all other similarly situated low security inmates because he meets the regulatory definition of an "inmate," as set forth in 28 C.F.R. Part 500.1(c). With regard to his treatment in prison, petitioner alleges that inmates in his position are denied the "privilege of possessing items allowed to purchase at Federal Bureau of Prison facility such as toe-nail-clippers, and beard-trimmers which similar security custody F.B.O.P. Inmates are allowed to possess." (Pet. at 12.) He claims these conditions are more severe than the conditions experienced by prisoners who are United States citizens and housed in B.O.P. facilities. Finally, petitioner claims, that unlike prisoners who are U.S. citizens, he is being

> denied the same rights and privileges . . . such as Release Preparation Program, Drug and alcohol Program, Pre-release-Community Corrections Center-Half way house Program pursuant to Federal Bureau of Prisons Policy and procedure, the Second Chance Act H.R. 1593, chapter 3, Section

---

²(...continued)
(1999)(holding that §§ 241-242 do not provide a basis for civil liability); Owens v. Johnson, No. 98-1728, 1999 WL 777453 at *1 (6th Cir. Sept.16, 1999)(holding that § 242 does not provide a private cause of action).

3

> 251(a),(c)(1), and 18 U.S.C.A. § 3624(c)(1), as well as Home Confinement Program pursuant to Second Chance Act H.R. 1593, chapter 3, Section 251(a),(c)(2), and 18 U.S.C.A. § 3624(c)(2).

(Pet. at 13). No where in the complaint does he assert that he applied for any of these programs, or that he was qualified to participate in any of these programs.

### *Federal Habeas Petitions*
### *28 U.S.C. § 2241*

The federal habeas statute provides, in relevant part, that:

> (c) The writ of habeas corpus shall not extend to a prisoner unless--
>
> > (1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or
> >
> > (2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or
> >
> > (3) He is in custody in violation of the Constitution or laws or treaties of the United States;

28 U.S.C. § 2241(c). Mr. Homesombath captions his § 2241 pleading as a "Petition to Correct Custody." The caption supports his pretextual argument that he is suffering from "unconstitutional physical confinement." (Pet. at 1.) This 'unlawful confinement,' he argues, violates his Fifth and Fourteenth Amendment rights to due process and equal protection under the Constitution. A closer reading of the petition reveals, however, that this is not a challenge to petitioner's confinement, but an attack on the respondents' decision to transfer him to N.E.O.C.C. based on his status as an immigrant. Were this actually a challenge to his confinement, the court's relief would ultimately effect the length or duration of the petitioner's confinement. This is true with regard to requests for

immediate release, as well as challenges to the manner in which a prison is executing an inmate's sentence.[3] Therefore, for the reasons set forth below, petitioner has failed to state a claim for relief under the federal habeas statute.

The Supreme Court has clarified that habeas corpus proceedings are the proper mechanism for a prisoner to challenge the "legality or duration" of confinement. Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). This legal axiom was reiterated in Nelson v. Campbell, 541 U.S. 637 (2004), when the Court explained that "constitutional claims that merely challenge the conditions of a prisoner's confinement, whether the inmate seeks *monetary or injunctive relief,* fall outside of that core [of habeas corpus] and may be brought pursuant to § 1983 in the first instance." Id. at 643 (emphasis added); see also Muhammed v. Close, 540 U.S. 749, 750(2004) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 action.")

If Mr. Homesombath were attempting to challenge the BOP's denial of a request to participate in an early release program, his petition is premature. Any challenge to the BOP's denial of his eligibility based on nationality, needs to first be exhausted through the BOP's administrative remedies. Little v. Hopkins, 638 F.2d 953, 953-54 (6th Cir.1981) (federal prisoner must first exhaust his available remedies before filing a § 2241 petition for habeas corpus relief). The remaining issues Mr. Homesombath sets forth in his petition, however, do not address any claim for which habeas

---

[3]The Supreme Court noted in Muhammed that it "has never followed the speculation in Preiser v. Rodriguez, 411 U.S. 475, 499, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), that . . . a prisoner subject to 'additional and unconstitutional restraints' might have a habeas claim independent of § 1983." Muhammed, 540 U.S. at 752 n.1.

5

relief can be granted.

Petitioner asserts that this court has § 2241 jurisdiction over claims which challenge the manner, condition and location of a prisoner's confinement. He cites Thompson v. Choinski, Docket #04-5079-pr, WL 1969652 (2nd Cir. Decided May 8, 2008)," an unreported decision in the Second Circuit, to support this belief.[4] (Pet. at 3.) Choinski is not, however, controlling law. It is the opinion of the Supreme Court that,"[c]hallenges to the lawfulness of confinement or to particulars affecting its duration are the province of habeas corpus." Hill v. McDonough, 547 U.S. 573, 579 (2006)(quoting Muhammad, 540 U.S. at, 750)(citing Preiser, 411 U.S. at 500). This is why "federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C. § 2254[§ 2241 for federal prisoners], and a complaint under the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983." Muhammad, 540 U.S. at 750. This court is bound to first follow precedent of the Supreme Court. See Daugherty v. Campbell, 935 F.2d 780, 784 (6th Cir.1991)(noting that this court first looks to Supreme Court cases, then to Sixth Circuit cases, and finally to decisions of other circuits); Bing ex rel. Bing v. City of Whitehall, Ohio, 456 F.3d 555 (6th Cir. 2006). Because the Sixth Circuit has followed the Court's consistent holding that habeas relief is designed to test the fact or duration of confinement, Thomas v. Eby, 481 F.3d 434, 438 (6th Cir.2007), petitioner's reliance on Choinski is unavailing.

Even the Johnson case Mr. Homesombath cites, which challenged an unwritten policy of placing new or transferred prisoners based on race, was a civil rights action pursuant to 42 U.S.C. §§ 1981 and 1983. Thus, petitioner has consistently failed to assert a basis upon which this court

---

[4]The correct citation is Thompson v. Choinski, 525 F.3d 205 (2d Cir. 2008), petition for cert. filed __U.S.L.W.__ (U.S. Nov 12, 2008)(No. 08-7358).

6

can exercise habeas jurisdiction over his claim, which exclusively attacks his conditions of confinement. This court cannot grant the relief petitioner seeks pursuant to 28 U.S.C. § 2241. To the extent he seeks relief other than release or a change in the manner in which his sentencing is being executed, the appropriate action would be to file a civil rights complaint. <u>Preiser</u>, 411 U.S. at 484.

## CONCLUSION

Based on the foregoing, this petition is denied and this action is dismissed without prejudice pursuant 28 U.S.C. § 2243. Further, the court certifies pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

*/s/ Donald C. Nugent 1/15/09*
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE